OPINION
Defendant, Dennis J. Waddell, appeals from the judgment of the Franklin County Court of Common Pleas convicting him of attempted murder and felonious assault. For the reasons that follow, we affirm.
On April 30, 1999, defendant was indicted on one count of attempted murder in violation of R.C. 2923.02 as it relates to R.C. 2903.02 and three counts of felonious assault in violation of R.C. 2903.11. All counts carried firearm specifications pursuant to R.C. 2941.145. A jury trial commenced on July 20, 1999.
Evidence relevant to the issues raised on appeal consists of the following. Charles Bowers testified that on July 17, 1998, he lived at 1500 North Fourth Street, Apartment 5, with his sister and nephew. Defendant, known by the street name "Sir Yen," lived next door. Bowers had known defendant for about five months and considered him a good friend.
On that date, Bowers and his friend, Andre Adams, met defendant and defendant's brother "Foo" at the Columbus Jazz and Rib Festival. As the four were walking around the festival, defendant began talking to a girl. Bowers told Adams to get defendant's attention by calling him his given name, Dennis. When defendant heard Adams calling to him, he became angry and said he didn't like to be called Dennis. Bowers apologized; however, after defendant "got in [Bowers'] face" (Tr. 19), the two began arguing. Bowers told defendant that he "wasn't going to fight [him] over nothing stupid like that." (Tr. 18.) After some pushing, the two walked away from each other.
After leaving the festival, Bowers, Adams, defendant and Foo met again at a nearby bus stop, but returned to the near north side on separate buses. After purchasing beer at a neighborhood carryout, Bowers and Adams walked back to defendant's apartment. As the two approached the apartment building, they noticed defendant pacing in the yard. Defendant approached them and asked "what's up now?" (Tr. 21.) Bowers responded by saying, "I thought we resolved this down there." (Tr. 21-22.) Defendant pointed a gun at Bowers' head, but did not fire a shot at that time. Instead, he began waving the gun around, eventually firing a shot toward the ground between defendant and Adams. After the shot was fired, Adams ran toward defendant's apartment. Bowers testified that he didn't run away for fear of being shot in the back. Seconds after the first shot was fired, defendant hit Bowers in the chin with the gun. Dazed from the blow to the chin, Bowers fell forward, grabbing defendant from behind. Thereafter, defendant reached behind him and shot Bowers twice in the stomach. After Bowers fell to the ground, defendant and Foo began kicking him in the head. While lying on the ground, Bowers grabbed defendant's legs, causing him to fall to the ground. As defendant fell, he dropped the gun. Upon hearing sirens, defendant got up and ran away. Bowers was transported to a nearby hospital for treatment; he survived the shooting, but had to undergo surgery to remove his appendix and a small portion of his intestines.
Andre Adams's testimony generally corroborated that of Bowers. Adams testified that he knew defendant as "Sir Yen" and did not learn his real name until the evening of the festival. He further testified that he and Foo walked away when defendant and Bowers began arguing at the festival. After leaving the festival, Adams and Foo walked to the bus stop together, where they met defendant and Bowers. When Adams asked if everything was alright, both Bowers and defendant responded affirmatively.
After purchasing beer at the neighborhood carryout, Adams and Bowers noticed defendant standing in the front yard of the apartment. Bowers and defendant exchanged words and began to argue again. Defendant drew a gun and waved it in front of both Adams and Bowers. Bowers told defendant to "[d]o what you got to do." (Tr. 49.) Defendant fired a shot between Adams and Bowers, who were standing approximately three feet from defendant. Thereafter, Adams ran to the apartment building. Adams testified that as he knocked on the door of Bowers' sister's apartment, he "saw Charles lunge forward and Sir Yen was like leaning, running away. And I saw two shots fired then they faded away past the building." (Tr. 53.) After Bowers' sister called the police, Adams went outside and found Bowers walking up the steps holding his stomach.
Bowers' sister, Charo, testified that at around 10:45 p.m. on July 17, 1998, defendant came to the door of her apartment and asked if Charles was home. She told him that he would be back in a little while. Approximately fifteen minutes later, she heard gunshots. Shortly thereafter, she opened the door to Adams' knocking. Adams came inside and told her that Charles had been shot.
Based on this evidence, the jury returned verdicts finding defendant guilty of attempted murder and one count of felonious assault. Upon application of the prosecuting attorney, the trial court entered a nolle prosequi on the two remaining felonious assault counts. By judgment entry filed September 14, 1999, the trial court sentenced defendant to ten years of imprisonment on the attempted murder and eight years on the felonious assault. The trial court further ordered that the sentences run concurrently. In addition, the court imposed a consecutive three year term of actual incarceration for use of a firearm. It is from this judgment entry that defendant appeals, raising the following four assignments of error:
 [1.] Attempted murder, as charged in count one of the indictment, and felonious assault, as charged in count two, are allied offenses of similar import committed with a single animus. The court erred by imposing concurrent sentences for the two offenses when it should have directed the prosecutor to elect on which offense conviction would be entered and sentence pronounced.
 [2.] The court erroneously failed to instruct the jury on aggravated assault as an offense of lesser degree to felonious assault.
 [3.] Appellant's attempted murder conviction was not supported by the evidence and was against the manifest weight of the evidence.
 [4.] Appellant received ineffective assistance of counsel.
For purposes of discussion, defendant's assignments of error will be considered out of order. By his third assignment of error, defendant contends that the conviction for attempted murder was not supported by the evidence and was against the manifest weight of the evidence.
"Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." State v. Smith (1997), 80 Ohio St.3d 89,113, following State v. Thompkins (1997), 78 Ohio St.3d 380,386. "When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, after viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Clemons (1998), 82 Ohio St.3d 438,444, following State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." Clemons, supra.
By contrast, in order for an appellate court to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Thompkins, supra, at 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193. ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.") Thompkins, supra, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Defendant contends that no evidence adduced at trial supports the inference that he acted with the specific intention of causing the death of Charles Bowers.[1] Although defendant acknowledges he shot Bowers, he disclaims any intent to kill him. Defendant argues that "no words were attributed to [defendant], either at the time or to others later on, indicating such a purpose." (Defendant's brief at 31.) Defendant contends that the shots causing injury were fired only after Bowers lunged toward defendant and as defendant fell to the ground, with his back toward Bowers' stomach. According to defendant, "firing a gun in this manner, aimed or not, permits the inference of a knowing act * * * but it does not permit an inference of purpose." (Defendant's brief at 31.) We disagree.
A person commits attempted murder when he purposely engages in conduct that, if successful, would result in the purposeful killing of another person. See R.C. 2903.02 and 2923.02(A); State v. Fox (1981), 68 Ohio St.2d 53, 55. Purposely is defined in R.C. 2901.22(A):
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
Purpose and intent may be established by circumstantial evidence. State v. Shue (1994), 97 Ohio App.3d 459, 466. Moreover, the intent of an accused must be gathered from all the facts and circumstances surrounding a case. State v. Huffman
(1936), 131 Ohio St. 27, paragraph four of the syllabus. A jury may infer an intention to kill where the natural and probable consequence of a defendant's act is to produce death and the jury may conclude from all the surrounding circumstances that a defendant had an intention to kill. State v. Edwards (1985),26 Ohio App.3d 199, 200, citing State v. Robinson (1954), 161 Ohio St. 213
. Such circumstances include the means or weapon used, its tendency to destroy life if designed for that purpose, and the manner in which the wounds are inflicted. Robinson, supra,
paragraph five of the syllabus. An accused's specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death. State v. Mackey (Dec. 9, 1999), Cuyahoga App. No. 75300, unreported, citing State v. Widner
(1982), 69 Ohio St.2d 267 (finding purpose to kill in passenger's firing gun at individual from moving vehicle).
Although defendant disclaims any intent to kill, the jury had ample evidence to conclude otherwise. Defendant, armed with a gun, sought Bowers out to reinitiate the argument that began at the Jazz and Rib Festival. Defendant placed the gun to Bowers' head, waved the gun around, and fired a shot between Bowers and Adams, who stood only three feet away. Defendant then struck Bowers on the chin with the gun. After Bowers lunged toward defendant, landing on defendant's back, defendant positioned the firearm behind defendant's back and fired two shots. "[T]he act of pointing a firearm and pointing it in the direction of another human being is an act with death as a natural and probable consequence." State v. Turner (Dec. 30, 1997), Franklin App. No. 97APA05-709, unreported, quoting State v. Brown
(Feb. 29, 1996), Cuyahoga App. No. 68761, unreported (finding sufficient evidence of intent to kill in firing a gun from an automobile at a group of individuals); cf. State v. Smith (1993),89 Ohio App.3d 497, 501 (finding that pointing a firearm at a group of people less than twenty feet away and shooting at least one shot could be used by the trier of fact as proof of intention to kill). The facts and circumstances surrounding the incident here support the jury's conclusion that defendant harbored the intent to kill Bowers. Accordingly, we find that the evidence presented at trial was sufficient to support a finding by a rational trier of fact that defendant committed attempted murder. Further, we find that the jury's verdict was not against the manifest weight of the evidence, as sufficient competent, credible evidence was presented to permit reasonable minds to find defendant guilty beyond a reasonable doubt. Accordingly, defendant's third assignment of error is overruled.
By his second assignment of error, defendant contends that the trial court erred when it refused to instruct the jury on the elements of aggravated assault as an offense of inferior degree to felonious assault.
A trial court has a duty to limit the scope of jury instructions to only the facts in issue that the evidence tends to establish. Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,591. A trial court's determination to refuse a requested jury instruction shall not be overturned absent an abuse of discretion. State v. Wolons (1997), 44 Ohio St.3d 64, 68. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Id., quoting State v. Adams (1980),62 Ohio St.2d 151, 157.
At the time of the indictment, R.C. 2903.11, defining felonious assault, provided, in pertinent part, as follows:
No person shall knowingly:
 (1) Cause serious physical harm to another or to another's unborn;
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code.
Aggravated assault was defined under R.C. 2903.12, in pertinent part, as follows:
 No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
 1. Cause serious physical harm to another or to another's unborn;
 2. Cause or attempt to cause physical harm to another or another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
In State v. Deem (1988), 40 Ohio St.3d 205, the Ohio Supreme Court held that aggravated assault is an offense of inferior degree of felonious assault because the elements of aggravated assault are identical to those of felonious assault, except for the additional mitigating element of provocation. Id. at 210-211. The court further held that "in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury." Id. at paragraph four of the syllabus. At paragraph five of the syllabus, the court held that "[p]rovocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time. (State v. Mabry [1982], 5 Ohio App.3d 13, 5 OBR 14,449 N.E.2d 16, paragraph five of the syllabus, approved.)" TheDeem court found that a historically stormy relationship and the bumping of the offender's car by the victim were insufficient, as a matter of law, to incite the offender into using deadly force.Id. at 211. The court concluded that since there was insufficient evidence of provocation, an instruction on aggravated assault was not supported by the evidence in the case and was thus properly refused. Id.
In State v. Shane (1992), 63 Ohio St.3d 630, the Ohio Supreme Court elaborated on what constitutes "reasonably sufficient" provocation in the context of voluntary manslaughter. The court determined that an objective standard must first be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage, i.e., the provocation must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." If this objective standard is met, the inquiry then shifts to a subjective standard, to determine whether the defendant in the particular case acted under the influence of sudden passion or in a sudden fit of rage. Id. at 634-635.
Defendant claims that sufficient evidence was presented during trial to warrant a jury instruction on aggravated assault. Particularly, defendant contends that Bowers' efforts to embarrass defendant by addressing him by his proper name rather than by the name he preferred in the presence of the girl he was talking to at the Jazz and Rib Festival constituted provocation reasonably sufficient to incite the use of deadly force. We disagree.
"Words alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations."Id. at paragraph two of the syllabus. In the instant case, we find that Bowers' use of defendant's given name did not constitute reasonably sufficient provocation to incite defendant's use of deadly force against Bowers. Moreover, the record contains no evidence that Bowers was shot in a sudden passion or fit of rage. Although Bowers and defendant engaged in some oral and physical conflict at the Jazz and Rib Festival, both told Adams at the bus stop that everything was alright. Thereafter, Bowers and defendant took separate buses to the short north area. Upon Bowers' return from a neighborhood store, he saw defendant pacing in front of his apartment. Defendant had been awaiting Bowers' return, having stopped by the apartment about fifteen minutes earlier to see if he was home. Despite what should have been a sufficient cooling off period, defendant instigated another oral confrontation, fired a shot between Adams and Bowers, and then shot Bowers in the stomach.
Having fully reviewed the trial testimony, and having considered defendant's mental and emotional state, as well as the conditions and circumstances surrounding him at the time of the shooting, we find, as a matter of law, that defendant failed to present sufficient evidence that he acted under a sudden passion or fit of rage sufficient to incite him into using deadly force against Bowers. Defendant had ample time to reflect upon his course of action between the initial confrontation at the Jazz and Rib Festival and the time that he began shooting.
Under the circumstances, we find no evidence of provocation serious enough to arouse the passions of an ordinary person beyond his or her control. Thus, defendant has failed to meet even the objective standard set forth in Shane in order to demonstrate reasonably sufficient provocation. Accordingly, we hold that the trial court did not abuse its discretion in denying defendant's request for an instruction on the offense of aggravated assault as an inferior degree of the offense of felonious assault. The second assignment of error is overruled.
By the first assignment of error, defendant contends that the trial court erred in violation of his constitutional rights against double jeopardy and statutory rights under R.C.2941.25 when it sentenced defendant to concurrent prison terms for felonious assault and attempted murder. Defendant argues that, "applied to the facts of this case" (defendant's brief at 9), both crimes involved the same criminal conduct and, as such, defendant should have been sentenced on only one of the offenses.
Initially, we note that the record demonstrates that defendant failed to raise any such constitutional double jeopardy claim or allied offense statutory argument in the trial court or any time thereafter. By failing to raise any such arguments during the trial court proceedings, defendant has waived the issues for purposes of appeal. See, generally, State v. Stojetz
(1999), 84 Ohio St.3d 452, 455. However, assuming arguendo that defendant had properly preserved the issues, we would find no merit to defendant's arguments, as the record does not support a finding that the trial court erred in sentencing defendant to concurrent prison terms for felonious assault and attempted murder.
R.C. 2941.25 governs allied offenses of similar import and provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
Until relatively recently, the test used by Ohio courts to determine whether two or more offenses constitute allied offenses of similar import under R.C. 2941.25 was that articulated by the Ohio Supreme Court in State v. Blankenship (1988),38 Ohio St.3d 116:
 * * * In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. * * * [Emphasis sic., id. at 117.]
In the past, the Ohio Supreme Court applied the first step of the two-tiered Blankenship test in two different ways. For instance, in Newark v. Vazirani (1990), 48 Ohio St.3d 81, the court compared the elements of the offenses by reference to the particular facts alleged in the indictment. Id. at 83. By contrast, in State v. Richey (1992), 64 Ohio St.3d 353, the court compared the statutory elements of the offenses in the abstract.Id. at 369. Recognizing the inconsistencies in these two different approaches, the court, in State v. Rance (1999),85 Ohio St.3d 632, reconsidered "whether the court should contrast the statutory elements in the abstract or consider the particular facts of the case." Id. at 636. In resolving this issue, the court held that "[u]nder an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract. (Newark v. Vazirani
[1990], 48 Ohio St.3d 81, 549 N.E.2d 520 overruled.)" (Emphasissic.) Id. at paragraph one of the syllabus. Thus, the court held that, when determining whether two or more offenses are allied offenses of similar import:
 * * * Courts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other." * * * And if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. * * * Id. at 638-639.
Further, the court held, at paragraph three of the syllabus, that:
 In Ohio it is unnecessary to resort to the Blockburger
test in determining whether cumulative punishments imposed within a single trial for more than one offense resulting from the same criminal conduct violate the federal and state constitutional provisions against double jeopardy. Instead, R.C. 2941.25's two-step test answers the constitutional and state statutory inquiries. The statute manifests the General Assembly's intent to permit, in appropriate cases, cumulative punishments for the same conduct. (Garrett v. United States [1985], 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764; Albernaz v. United States [1981], 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275; State v. Bickerstaff [1984], 10 Ohio St.3d 62, 10 OBR 352, 461 N.E.2d 892, approved and followed.)
In the instant case, the offenses at issue, attempted murder and felonious assault, do not merge for purposes of sentencing under R.C. 2941.25 because a comparison of their respective elements reveals that they are not offenses of similar import. Each offense requires proof of at least one element that the other does not.
As noted previously, a person commits attempted murder when he purposely engages in conduct that, if successful, would constitute the purposeful killing of another person. See R.C.2903.02(A) and 2923.02(A). By contrast, a person commits felonious assault when he knowingly either causes serious physical harm to another or causes or attempts to cause physical harm to another by means of a deadly weapon or dangerous ordnance. See R.C. 2903.11(A)(1) and (2). An abstract comparison of the elements of these two crimes reveals that they differ in at least three respects. First, attempted murder requires that the offender act "purposely," whereas felonious assault requires only that the offender act "knowingly." While proof of purpose is sufficient to prove knowledge, proof of knowledge is not sufficient to prove purpose. R.C. 2901.22(E). Because the culpable mental state required for attempted murder is higher than that required of felonious assault, an act of felonious assault will not necessarily result in an act of attempted murder.
Secondly, attempted murder requires that the offender attempt to cause the death of another person, an element not required to prove felonious assault. Thus, a person could commit a felonious assault without intending to cause the victim's death, precluding a finding of attempted murder.
Finally, felonious assault under R.C. 2903.11(A)(1) requires proof of serious physical harm; the offense of attempted murder does not. Felonious assault under R.C. 2903.11(A)(2) requires proof that the offender accomplished, or attempted to accomplish, the proscribed result by means of a deadly weapon or dangerous ordnance. Conversely, the offense of attempted murder may be committed by any means. Thus, an act of attempted murder will not necessarily result in an act of felonious assault under either R.C. 2903.11(A)(1) or (2).
Having compared the statutory elements of attempted murder and felonious assault in the abstract, as directed byRance, and having determined that those elements do not "correspond to such a degree that the commission of one crime will result in the commission of the other," id. at 638, we conclude that attempted murder and felonious assault are not allied offense of similar import. Accordingly, defendant may be convicted of both, and the separate sentence for each offense violates neither R.C. 2941.25 nor the constitutional protections against double jeopardy.
Our research reveals that after Rance was decided by the Ohio Supreme Court, only two other Ohio appellate courts have been called upon to consider whether the offenses of attempted murder and felonious assault are allied offenses of similar import. SeeState v. Nelson (Jan. 12, 2000), Tuscarawas App. No. 1999AP020007, unreported and State v. Shinn (June 14, 2000), Washington App. No. 99CA29, unreported. Both courts, applying the abstract comparison of the statutory elements required by Rance, have held that attempted murder and felonious assault are not allied offenses of similar import; accordingly, a defendant convicted of both offenses may properly be sentenced for both.
Defendant relies on State v. Jones (Oct. 22, 1998), Franklin App. No. 98AP-129, unreported, for the proposition that attempted murder and felonious assault are allied offenses of similar import. In that case, however, the trial court found at sentencing that the offenses merged; in the instant case, no such finding was made by the trial court. Moreover, Jones was decided prior to the Ohio Supreme Court's decision in Rance. Under Rance, a finding that attempted murder and felonious assault are allied offenses of similar import would clearly have been improper. Accordingly, the first assignment of error is overruled.
By the fourth assignment of error, defendant contends that his trial counsel was ineffective. In order to establish ineffective assistance of counsel, a defendant must show: (1) that his trial counsel's performance fell below an objective standard of reasonable representation; and (2) that he was prejudiced by such performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To establish prejudice, defendant must demonstrate that there "exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. As recognized by defendant, the United States Supreme Court has explained:
 * * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable. Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064.
Defendant first asserts ineffective assistance of counsel because defense counsel referenced several facts during his opening statement which were ultimately not proven during trial. During opening statement, defense counsel painted a sympathetic picture of defendant as a young man (age twenty-one) who had grown up in a single-family home in the projects; had been beaten when he refused to join a gang; and had gone to live with his grandmother after his mother's death in 1995. With regard to the crimes for which he was charged, defense counsel stated, interalia, that: defendant "does not deny he was at the Jazz and Rib Fest * * * and does not deny that he is acquainted with Charles Bowers * * * [but] denies that he goes by a street name Sir Yen [and] denies that on July 17, 1998 he shot Charles Bowers at 11:00 at night." (Tr. 12.) Defense counsel further stated that "[defendant's] reaction to being accused of committing this crime based solely on the fact that someone called him by his name stirs the same reaction in him that we believe it will stir in you." (Tr. 12.)
After the state presented its case-in-chief, the defense rested without presenting any evidence. Defendant contends that the failure to establish the facts asserted during opening statement through testimony of either defendant or other defense witnesses permitted the jury to negatively assess defendant's credibility.
As defense counsel filed a "Notice of Alibi" on defendant's behalf, it appears that he was planning to call either defendant or another witness to testify on defendant's behalf. As noted previously, no defense was presented to the jury. Trial strategy may have been altered, of necessity, after the parties presented opening statements. For instance, if defendant originally wished to testify and then decided otherwise, defense counsel would be compelled to abide by that decision. This court has recognized that an attorney must abide by a client's decision on fundamental issues such as whether the client will testify.State v. Edwards (1997), 119 Ohio App.3d 106, 109. Similarly, a decision by defense counsel not to call witnesses (including defendant) may result from changed circumstances during trial and does not constitute ineffective assistance of counsel. State v.Torres (Apr. 30, 1999), Fulton App. No. F-98-017, unreported.
Defendant next argues that he was denied the effective assistance of counsel because counsel failed to renew his request for a jury instruction on aggravated assault at the conclusion of the charge to the jury. As discussed under the second assignment of error, an instruction on aggravated assault was unwarranted by the evidence. Thus, defense counsel cannot be deficient for failing to renew its request for an instruction to which defendant was unentitled as a matter of law.
Finally, defendant argues that defense counsel's failure to raise the issue of allied offenses constituted ineffective assistance of counsel. As noted in our disposition of the first assignment of error, attempted murder and felonious assault are not allied offenses of similar import. Consequently, any attempt by defense counsel to raise the issue of allied offenses would have been unsuccessful.
Upon review of the record, we find that defendant has failed to demonstrate either that defense counsel's performance was deficient or that a reasonable probability exists that defendant would have been acquitted of the charges against him but for counsel's alleged errors. Accordingly, the fourth assignment of error is overruled.
Having overruled all four of defendant's assignments of error, this court hereby affirms the judgment of the Franklin County Court of Common Pleas.
 _________________________ PETREE, J.
TYACK and LAZARUS, JJ., concur.
[1] At the close of the prosecution's case-in-chief, defendant moved for a judgment of acquittal on the attempted murder charge on the basis that the state presented no evidence of intent to kill. The motion was overruled. After the jury returned its guilty verdict, defendant again moved for a judgment of acquittal on the attempted murder charge, pursuant to Crim.R. 29(C), on the same grounds; the state failed to prove defendant acted purposely. Upon review of the record, we find no disposition of defendant's Crim.R. 29(C) motion. It is well-established that "[w]hen a trial court fails to rule on a motion, the appellate court presumes that the trial court overruled the motion." Brannan v. Fowler (1995),100 Ohio App.3d 577, 581. Thus, we find that the Crim.R. 29(C) motion was impliedly overruled on September 14, 1999, when the trial court filed the termination entry in this case.